Thank you, Your Honor. Good morning, Your Honors. My name is Michael Donahoe. I'm with the Federal Defenders of Montana, the Helena Office. We're here today in a firearms case. We had some sentencing issues on, but by agreement those issues have gone by the wayside by dismissal. I'm here to talk about the nature of the predicate crime. We have a Missouri conviction where the man was convicted in 1995 and discharged his sentence in 1999. Prior to that conviction, Missouri apparently amended its own firearms legislation and delisted the crime of which or for which he was convicted from its own firearms statute. So I want to make the presentation here that when he committed his crime, his crime would not have been one that would have precluded him from obtaining a concealable firearm or any firearm in the State of Missouri. Well, isn't the question rather whether his civil rights have been restored? Well, and that's the way to – That's one ground of the statute. It is, Your Honor, and I think that's exactly the way the district court, the Federal District Court, treated the issue as one of restoration of rights. Don't you have to address that? And I do, and I will, but I just wanted to make clear the point that there was no prohibition in the State of Missouri for this man to possess a firearm. Okay. Well, I understand that, but my concern is that, as I understand it, he still couldn't be on a jury in Missouri. That's absolutely right. And why isn't that in itself? I mean, I guess there's some other things. He couldn't be on the highway patrol, which most of us wouldn't miss, I suppose. But, you know, there's some other things like that. But as to fundamentals, he couldn't be on a jury, and why isn't that a lack of restoration of civil rights? I want to make the point – I'm asking for a new look or a reconfiguration here. I understand that Meeks did run through – the Meeks decision did run through the rights that were not restored, that he could not sit on a jury, that he couldn't be on the highway patrol. He is restored his right to vote. He is restored to hold other offices, certainly. Wouldn't we have to recommend an in-bank rehearing if we were going to overturn Meeks? I don't think so, Your Honor. I considered that, and I guess my response is, is that under the Ann Averti case, where there's the suggestion that if the firearms rights in the State law, in the State code, existed for the individual, that might be a right that could be considered in the overall mix of factors of whether or not the rights had been restored, substantially restored under Gomez. So what I'm saying here is, is at the time of Meeks, this wasn't the law. The Missouri firearms law wasn't the law. I understand that. Right. And I'm just asking for a reconfiguration. I'm saying now – What under Ann Averti are you pointing to that you think leaves this little window? There's some language, by the way, in the opinion that says a court might want to consider the State firearms law, I think, in the restoration of rights paradigm. And that's my introduction to this concept, saying that since we're in a new – working from a new frame of reference, it's a new time, it's a new day, the State law changed in Missouri. That was not the case when the Meeks case was decided. So I'm just asking the Court to do, basically, a new restoration of rights analysis. It's a fair argument, though I'm not – I'm not sure it would carry everyone along with it. But clearly, it's not like a case where the Supreme Court has made a new rule of law that would let a panel disregard a prior precedent. So doesn't the issue really have to be presented in an en banc petition or a panel? If the panel agreed with you, it would have to make a sua sponte call for en banc review. How can we, as a panel, not apply Meeks on this – because of this change of one element of Missouri law? Because I think the situation is different, Your Honor. I think that contextually we're dealing with a new set of facts, that the law in Missouri changed, that this particular individual did not lose his right to possess a firearm. I believe I can say that that's not something Mr. Meeks did. But even in Meeks, we didn't get to that second point about the firearm disability until the second prong. In other words, we ran through – I mean, so we would never get to prong two where we could invoke your new factual analysis if we follow Meeks, because we would still be, I think, stuck in prong one, wouldn't we? Right. And I understand that. You want us to limit Meeks to its underlying facts. Exactly. And say the rule of Meeks doesn't apply where a State has restored firearm possession and ability. Exactly. And even though the Meeks panel, in their reasoning as to the civil rights restoration prong, didn't stress the firearm inability, you want us to read that as a limitation on the opinion. I think that's a fair summary, Your Honor. What would you do then with the Supreme Court? Because the 927 doesn't preempt State law. And then if you go back to the Supreme Court case, they say in 927 and in the Caron case, they say that Congress meant to keep guns away from all offenders who the Federal Government thinks might cause harm. So it seems to me even if we accept your factual delineation, we've got to – we have to go back to the Supreme Court opinion and figure out how do you factor it in. And I'm not sure it gets you anywhere. Do you see any leeway in the Supreme Court? Well, Your Honor, I guess my response to that is that the Heron issue or what I tried to bring up out of Heron was the considerable difference in the way that the rights can be restored by the certificate or just by operation of law. And I guess where I want to go with that, what Your Honor is addressing, is the fairness aspect, that if he, Mr. Carey, in this new situation doesn't have any positive notice under the State firearms law, that he's a prohibited person. Judge Lovell even mentions that in the downward departure area, I think, in the sentencing scheme. I think it's at ER 84. The judge is making his record on the downward departures, and he says the man thought that he could possess a firearm under State law, apparently. So I guess that's my visceral response to that, Your Honor, is the fairness aspect. We have an operation of law restoration, and the State law does not prohibit him from possessing the firearm. It's the same as in the Heron situation, where they draw that real good distinction between being restored by the certificate and the certificate not precisely saying, no, you cannot possess a firearm. And so what I want to say is that State law matters. In the restoration of rights paradigm, the State law really matters, to include the whole of State law, like Gomez says, which is analyzed in the Heron opinion. And here the whole of State law told this individual he had his right to sit on or to vote restored. He had a right to hold certain offices, and he was not prohibited from possessing a firearm. Let me ask this. Can you point to any circuit conflict, conflict with other circuits? Well, I think the Presley case from the Eighth Circuit addresses this issue and wouldn't go my way. It says clearly there's no substantial restoration, I think, under Missouri law. It goes the way of Meeks. I think maybe Presley is discussed in Meeks. So I guess that could be a problem. But I would hearken back, Your Honor, to the argument that it's a new context, it's a new day. There was new State legislation. And I don't think I can emphasize that enough. There was a period of time where this felony was listed in that dangerous felony statute. So he was a prohibited person. Up until August 28th, I think, of 1994, he would have been a prohibited person under Missouri law. I wouldn't be here. But that change in law, it was a small one, but it gave rise to this proceeding. All right. Why don't you save the remaining time, and we'll hear from the government. Thank you. Good morning. May it please the Court. My name is Paulette Stewart, and I'm an assistant United States attorney from the Helena, Montana, office, and I represent the appellee in this case. Your Honors, Daniel Carey is a prohibited person. In Title 18 United States Code, it prohibits people from being a prohibited person.  person, possessing firearms, who had previously been convicted in any court. In this case, we have a second-degree burglary conviction from Missouri. And what the defendant is trying to do here is put the cart before the horse. This Court has a two-part test, which the first part of that is, are the defendant's possession of firearms or ammunition? If the answer is no to the first part of the test, then the second step isn't even reached. But what counsel is asking us to do is to put the fact that in Missouri, he could bear a firearm as part of the substantial restoration. And does that change the mix so that we would say that there was substantial restoration? I think he is asking you to basically reconstruct your test, Your Honor. Because what this Court looks to, and this Court said so in Anna Verde, this Court looks to the right to vote, the right to sit on the jury, the right to hold public And the quote or the language I think that the defendant is relying on is on page 1309. This Court said that even if the court looked and even if is in your language, this Court looked to the State law giving felons the right to bear arms, the restoration of that single right still does not prevent prosecution under Section 1922g1. But you see, it's kind of interesting. I don't know where the line is for substantial. But he would have the right to vote, correct? Yes, ma'am. And the right to hold office. Yes, Your Honor. But he couldn't sit on a jury. Correct. And he couldn't hold certain jobs. Right. He still couldn't be a ---- So he's kind of half and half. Yes, Your Honor. But he can have a gun. Right. So do you kind of put these up like on a little pro and con chart? And how do you decide what weighs more heavily than the others? Because he's sort of at least half and half on the factors listed. And then if he had the gun, it would tip it in his favor in terms of having a substantial number of his rights restored. That is true. And I guess to that extent, the defense and I read his granting or his allowance to possess a firearm differently. The way I read the statute, Your Honor, is that during the five-year period immediately prior to his date, if he was incarcerated, he can't possess the firearm for five years. And so I guess in that regard, I read that statute differently, that he is still dispossessed from possessing a firearm for five years. So it's not a clean bill of health, you're saying. It's not a clean bill of health. It's basically a conditional bill of health. For five years from when? From basically his discharge. It basically, in the statute, it discusses basically confinement for the five-year period immediately preceding the date of possession. Go ahead. Five years has expired in this case. It has now. He actually discharged his conviction November 26th of 1999. At the time of his conviction for the 922-G1 violation, he had not. So in other words, that raises an interesting temporal question as to whether you judge his civil rights at the time of his release from the State or, you know, the State situation or at the time of his charge under the Federal law. Is there any guidance on that? Yeah. Other than, Your Honor, I am familiar with other States. I believe Colorado may be one of them that does restore civil rights by operation of law, and I believe it is actually a five-year period afterwards. But I can't tell you that there's actually any guidance as far as that is concerned concerning the Missouri conviction. What do you think about whether there's any ñ is there any guidance in our precedent as to whether this panel could distinguish or limit Meeks in the way that the appellant argues, or whether we would have to, if we disagreed with you and agreed with appellant, whether we would have to urge and bank reconsideration? Your Honor, I think we would actually need to have an in-bank consideration of that because of the fact that this basically would change how this Court determines whether or not someone receives substantial consideration of or substantial restoration of their civil rights. And that's because in Annaverdi it was kind of an even if this might factor into. The Annaverdi court didn't actually factor that into its consideration. It was almost kind of an afterthought, sort of, a tangent to our idea. But that didn't actually factor into the Annaverdi decision, because what the Annaverdi decision did is it contrasted Meeks and Dobbs. It contrasted Meeks where the substantial restoration was not granted, that Meeks could vote and could hold office, but he couldn't be on a jury, couldn't be a sheriff, couldn't be a patrolman, with Dobbs in Michigan who could vote, who could hold office and who could be a member of a jury panel. So I think if this panel were to reconfigure that test or the considerations, I think an en banc opinion would be warranted. Counsel, let me get the facts straight on the timing. At the time of his offense here, the possession, the five years had not expired since his release from prison? That is correct, Your Honor. Let me get the facts straight. Our offense date, Your Honor, in the indictment, which is excerpts of record page 1, is the 10th day of May 2000. May 10, 2000? Yes, ma'am. Yes, Your Honor. And it would need until when? 2001 to get the five years? When? That five years would he was actually paroled on October 10th of 1997. So five years would be 2002. He actually discharged his sentence in November 26th of 1999, which would then take it to 2004. Unless you have any more questions, I will. I don't think so. Thank you. Thank you. You're going to have a short rebuttal. Thanks. Your Honors, I want to make this clear here about the time. He was convicted in 1995 and discharged in 1997. I think they're both November dates. And there was no firearm prohibition on the man for the duration. All right? By operation of State law, he was not prohibited from possessing a firearm at any time during that period. So he was reinvested by operation of law with his rights, even under a Meeks analysis, in November of 1999. And Judge McEwen raises the point that the difference between there could be different timing factors here. And I'm saying finally and fully, he had no prohibition under State law to possess a firearm, and he was reinvested with the rights that we all agree he was reinvested with by November of 1999. There is no five-year prohibition. The rights we agree. You mean the rights to have a firearm? Under the firearm and under Meeks, the ones that the Court has already addressed in that published opinion. So I'm saying by November of 1999, he's finished. There's no five-year period out from there. He's restored. But he's not had his rights restored to be on a jury. Correct. That was not included in the Meeks analysis. That is correct. Thank you, Your Honor. Thank you. The case just argued of United States v. Cary is submitted.
judges: B. Fletcher, McKeown, Gould